Argued February 7, reversed and remanded May 16, 1969

PEARSON, *Respondent, v.* GALVIN,
*Appellant.*

454 P2d 638

*Harold D. Gillis,* Eugene, argued the cause for appellant. On the brief were Butler, Husk & Gleaves, Eugene.

*Lloyd V. Weiser,* Portland, argued the cause for respondent. With him on the brief were Weiser, Bowles & Young, Portland.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, HOLMAN and HAMMOND, Justices.

GOODWIN, J.
Defendant appeals from a judgment of $11,125

general damages and $6,208 punitive damages in an action for false imprisonment.

The parties[①] are former friends and neighbors. The plaintiff was engaged in the crop-dusting business. He operated one aircraft and was interested in expanding his operation. In order to make a second aircraft available to the plaintiff, the defendant purchased one in his own name and allowed the plaintiff to use it. Apparently the parties contemplated that the plaintiff would eventually buy the airplane from the defendant.

Their friendship suffered a severe strain when the defendant asked the plaintiff to fly the defendant's plane from Condon, where it was being used to spray wheat fields, to Creswell for an annual inspection. The plaintiff was in the midst of a seasonal weed-control operation, and said that he needed the plane. The defendant insisted on the plane's immediate return. The plaintiff either misunderstood the defendant or disagreed with him. In any event, the defendant hired another pilot and instructed him to proceed to Condon and to fly the plane to Creswell. When the hired pilot appeared at the field near Condon where the plane was kept, the plaintiff got in the plane and took off, saying he would fly the plane to Creswell. The plane headed west, toward the Cascade Mountains. The hired pilot reported this transaction by telephone to the defendant. The defendant thereupon telephoned the Federal Aviation Administration in Redmond, asking the tower to try to hold the plane if it should land at Redmond. The plane did not land at Redmond. After calling Redmond, the defendant telephoned the

---

[①] After the trial below, the defendant died and his executrix was substituted as appellant. We treat the factual situation as it was described in the trial.

Eugene office of the Oregon State Police, and reported his plane either "stolen" or "taken without permission," depending upon the version of the testimony the jury might believe.

Following the defendant's telephone call to the state police, the Eugene office of the F.A.A. also called the state police to report that the defendant's plane had been followed to an emergency landing strip near McKenzie Bridge. Apparently, the Eugene F.A.A. office also gave the police their first information about the name of the pilot of the missing plane.

Upon learning where the plane was, the Eugene office of the state police directed an officer patrolling in southeastern Lane County to proceed to McKenzie Bridge to check on the airplane. The officer proceeded toward McKenzie Bridge by way of the McKenzie River highway. Much of the highway lies in a deep canyon. The officer lost radio contact with his headquarters. Before losing radio contact, the officer had been advised by the Eugene dispatcher only that a stolen aircraft had landed at McKenzie Bridge. Meanwhile, the Eugene dispatcher attempted to clarify the identity of the pilot by calling the defendant. When the dispatcher learned that the defendant knew the pilot and that the plane appeared to be headed toward Creswell, the officer attempted to radio the patrol officer to tell him that he should make no arrest, as the matter appeared to involve a civil dispute rather than a crime. This message never reached the patrol officer.

Upon arrival at the McKenzie Bridge landing strip, the officer placed the plaintiff under arrest. The officer took the plaintiff to Eugene. When the plaintiff arrived in Eugene, the officer in charge of the Eugene

office of the state police immediately ordered the plaintiff released from custody.

Two important questions, raised by a motion for a directed verdict, are whether the defendant instigated an arrest without a warrant, and, if so, whether the defendant had justification to instigate the arrest. See Restatement (Second) of Torts §§ 35, 119 (1965).

On facts necessary to make out a substantive case of instigation, the Restatement has the following comment:

> "*  *  * Instigation consists of words or acts which direct, request, invite or encourage the false imprisonment itself. In the case of an arrest, it is the equivalent, in words or conduct, of 'Officer, arrest that man!' It is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them  *  *  *." Restatement (Second) of Torts § 45A, Comment c.

There was conflicting evidence upon the language with which the defendant reported the incident to the police. The defendant swore that he did not use the word "stolen"; the police officer who received the message testified that he understood the defendant to say his plane had been "stolen." The officer obtained other information from the F.A.A. which tended to reinforce for a time the officer's belief that the plane was being stolen. The landing at a remote strip in the mountains, for example, was interpreted as a furtive act. (The plaintiff testified at the trial that he had landed at the remote airstrip because he wanted to relieve himself.) The police files revealed that the plaintiff had been arrested three years before for tak-

ing an airplane without the owner's consent. On that occasion, also, the plaintiff had landed at a remote airstrip in the mountains. This interesting fact, however, appears not to have been communicated to the arresting officer.

The jury could have believed that the defendant reported the plane "stolen" when the defendant knew that the plaintiff was merely taking the plane without consent. The jury could also have believed that although the defendant knew who was flying his plane he wrongfully withheld from the police the identity of the pilot in order to cause the police to react in the manner in which they reacted. The jury was entitled to conclude that the information which the defendant did give the police reasonably could have been expected to result in the plaintiff's arrest. Such a conclusion would support a finding that the defendant instigated the arrest.

■ The defendant has argued that intervening acts by the state police relieved the defendant of liability for bringing about the arrest. He contends that when the police learned from their own records of the plaintiff's former arrest, they were thereafter actuated by their own independent information to accomplish the arrest presently complained of. On this point, however, it has been noted that the arresting officer had no knowledge of the plaintiff's prior arrest at the time of the arrest in this case. The arresting officer had been dispatched and could not be recalled.

The defendant also contends that the failure of the police to maintain communications with officers in the field so as to recall the arresting officer was the proximate cause of the arrest and that the conduct of the defendant had no causal connection with the arrest. When it appeared to the dispatcher that a civil dis-

pute rather than a crime was involved, he did attempt to recall the arresting officer, but the defendant had set in motion the proceedings which followed. .

■ The plaintiff is not required to prove that the defendant was the sole, or exclusive, instigator of his arrest, but that the defendant participated by taking an active part in bringing about the arrest. See Prosser, Torts 60 (3d ed 1964). Assuming that the arresting officer would have been recalled on the orders of the Eugene officer in charge except for the failure of radio communications, the defendant nonetheless could have been found to have been the responsible cause of the arrest. The arrest of the plaintiff was a wholly foreseeable event, given the defendant's report that the aircraft had been "stolen" and the withholding by the defendant of the fact that the defendant knew the identity of the person flying the plane.

In *Humbert v. Knutson et al*, 224 Or 133, 354 P2d 826 (1960), a malicious prosecution rather than a false imprisonment case, the question of instigation was also raised. There we said:

> "* * * If pertinent information is withheld or there are misrepresentations made as to the facts, or undue influence brought to bear, there can be no intelligent exercise of the officer's discretion, and the person thus procuring the action of the officer is not insulated from responsibility * * *." 224 Or at 138.

■ Once the plaintiff proves his arrest and that the defendant was the instigator of the arrest, the burden of going forward with the evidence shifts to the defendant to prove that a felony had been committed and that he had probable cause to believe the plaintiff guilty. *Kraft v. Montgomery Ward & Co., Inc.*, 220

Or 230, 244, 315 P2d 558, 348 P2d 239, 92 ALR2d 1 (1960); *Joseph v. Meier & Frank Co.,* 120 Or 117, 250 P 739 (1926). The record in the case at bar would have permitted the jury to believe that no felony had been committed and that the defendant did not have probable cause, when he called the police and reported his airplane "stolen," to believe that a felony had in fact been committed.

A correct statement of the applicable rule is found in Comment *i* to Restatement (Second) of Torts § 119 (1965):

"In order that a private individual may be privileged to arrest another on suspicion of felony, it is necessary that an act or omission actually constituting a felony has been committed, and that the actor reasonably suspects that the other whom he arrests has committed that act or omission, and therefore has committed a felony. It is not enough that the actor, if a private person, believes no matter how reasonably that a felonious act has been committed, and that the other has committed it. Not only must the act of which the actor suspects the other have been committed, but the act must be a felony. The fact that an act has been committed and that the actor through a mistake of law or fact reasonably believes such act to be a felony does not give him any privilege to arrest another whom he knows or reasonably suspects of having committed the act, and this is true although the act, while not a felony, is a breach of the peace or misdemeanor * * *."

■ The trial court correctly overruled the motion for a directed verdict for the defendant.

■■ The defendant assigns error to a ruling of the trial court excluding as irrelevant the defendant's offer of an indictment by the grand jury charging the plaintiff with a violation of ORS 165.010 (larceny by

bailee) alleged to have consisted in the taking of the aircraft at the time and place heretofore described. The reason the trial court excluded the proffered evidence was that the indictment had been procured by this defendant after he had been sued for damages in this case, and the court deemed such an indictment irrelevant on the issue whether a felony in fact had been committed. In an action for malicious prosecution, evidence that the plaintiff had been indicted ordinarily would be relevant on the issue of probable cause to institute the prosecution. *Shoemaker v. Selnes et al,* 220 Or 573, 349 P2d 473, 87 ALR2d 170 (1960). But in an action for false imprisonment, once the plaintiff proves that he was arrested without a warrant, the defendant must prove that a felony in fact has been committed. Restatement (Second) of Torts § 119 (1965). An indictment, of course, is no evidence that a crime in fact has been committed.

■ An assignment of error challenges the propriety of submitting punitive damages in the case at bar. Because of the death of the defendant, punitive damages will not be an issue in a subsequent trial. *Ashcraft v. Saunders,* 251 Or 139, 444 P2d 924 (1968). It is not necessary to decide whether the evidence supported the submission of the issue in the trial below.

There must be a new trial because of error in the receipt of hearsay evidence. The plaintiff offered the testimony of the officer in charge of the Eugene office of the state police during the time of the plaintiff's arrest and custody. The officer had testified that as soon as he was in possession of all the relevant facts he had radioed the arresting officer instructions to bring the plaintiff to the office, "where we could effect his release." The officer then testified:

"* * * He was brought in to the office and

"I contacted one of the district judges regarding the matter, and explained the circumstances what had taken place, and the fact we were going to release him. At that time there appeared no crime had been committed.

"Q What instructions did you get from the court then?

"* * * [An objection on the ground of hearsay was made and overruled.]

"* * * * *

"A The court agreed whole-heartedly there appeared there was no crime committed and Mr. Pearson should be released."

The defendant contends that the foregoing testimony was offered to prove the truth of the assertion that no crime had been committed. As such, it was hearsay. The plaintiff defends the offer of the challenged testimony as proof of the procedures the state police had followed in terminating their custody of the plaintiff.

■ We agree that the testimony was hearsay, and that it should have been excluded. The out-of-court statement of the district judge to the effect that no crime had been committed had nothing to do with police proceedings. The officer had testified that he had already made up his mind to release the plaintiff. The hearsay had the effect of corroborating the officer's opinion on the substantive question whether or not a crime had been committed. Moreover, on the record before us, the hearsay cannot be said to have been free from prejudice.

■ A reviewing court should not, merely because hearsay evidence has been received, reverse a judgment unless it is prepared to say that if the challenged evidence had been excluded the result of the trial might

have been different. ORS 19.125(2); *State v. White,*
48 Or 416, 427, 87 P 137 (1906); and see J. Joseph,
*How the Adoption of the Uniform Rules of Evidence
Would Affect the Law of Evidence in Oregon,* 41 Or
L Rev 273, 279 (1962). In the trial of this case there
was a critical issue whether or not a felony had in
fact been committed. Most of the defense was based
on the theory that the plaintiff had been guilty at
least of larceny by bailee, a felony. The receipt of the
hearsay evidence that a district judge thought no crime
had been committed was palpable error. The error
was sufficiently prejudicial to require another trial.

Reversed and remanded.