Argued and submitted December 2, 1997, affirmed June 10, petition for review denied October 28, 1998 (327 Or 621)

Charles D. HIBER,
*Appellant,*

*v.*

CREDITORS COLLECTION SERVICE
OF LINCOLN COUNTY, INC.,
an Oregon corporation,
and Robert W. Connell,
*Respondents.*

(95C-12820; CA A96908)

961 P2d 898

Clifford G. Collard argued the cause for appellant. With him on the briefs was Macpherson, Gintner, Gordon & Diaz.

Jane Marie Bischman argued the cause for respondents. With her on the brief were J. Philip Parks and Parks, Bauer, Sime & Winkler.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

LINDER, J.

## LINDER, J.

■ The issue in this appeal is whether and under what circumstances an attorney may be sued for false imprisonment as a result of his actions in requesting issuance of an arrest warrant that did not comply with all applicable statutory procedures. This case arose after a private attorney, on behalf of his client, filed a motion with the district court alleging that plaintiff had violated a court order and requesting that plaintiff be arrested on contempt charges. In requesting the arrest warrant, the attorney did not allege and the district court did not find that plaintiff could not be personally served with a notice to appear. *See* ORS 33.055(5). After plaintiff was arrested on the warrant, plaintiff sued the attorney and, on a vicarious liability theory, also sued the attorney's client for false imprisonment.[1] We hold that an attorney is liable for an arrest made upon a warrant only if, in seeking issuance of the warrant, he or she acts in bad faith, intentionally misrepresents facts to the judge, or otherwise acts with malice. Likewise, the attorney's client can be vicariously liable only in those circumstances. Here, there is no dispute that the attorney acted in good faith. We therefore affirm the trial court's grant of summary judgment for defendants.[2]

This case arose out of a civil dispute over a debt. Creditors Collection Service (Creditors) obtained a money judgment against plaintiff, after which plaintiff was ordered to appear for a debtor's examination and to produce certain financial records. Plaintiff appeared, but he allegedly failed to produce the required financial records and refused to answer questions to Creditors' satisfaction. Creditors retained an attorney, Connell, who submitted two *ex parte* motions to the district court judge who had ordered the debtor's examination. One motion asked the court to issue a

---

[1] Plaintiff also alleged abuse of process. Summary judgment was granted to defendant on that claim; plaintiff does not challenge that ruling on appeal.

[2] On cross-motions for summary judgment, the trial court granted judgment for defendants. Because there are no disputed factual issues, we review the rulings on both motions to determine which party is entitled to judgment as a matter of law. *Stevens v. Bispham*, 316 Or 221, 223, 851 P2d 556 (1993); *Cochran v. Connell*, 53 Or App 933, 940, 632 P2d 1385, *rev den* 292 Or 109 (1981).

warrant for plaintiff's arrest based on his noncompliance with the earlier order; it was supported by an affidavit describing plaintiff's noncompliance. The second motion, apparently submitted in the alternative, asked to have plaintiff ordered to appear and show cause why he should not be held in contempt; it was supported by a substantially identical affidavit.[3]

Connell and the district court judge at some point discussed the requirements of the contempt statutes.[4] Connell believed that the trial court had inherent authority to bring a noncompliant judgment debtor before it, apart from its authority to hold the debtor in contempt, and that the procedural constraints of the contempt statutes did not necessarily apply. As a matter of local practice, the trial judges apparently operated under the same belief. That is, they considered a trial court's contempt authority to be separate from the court's inherent power to bring a judgment debtor before it. Local judicial practice, accordingly, sometimes was first to bring the noncomplying judgment debtor into court, and then to file the papers necessary to seek contempt sanctions. Consequently, in the affidavit in support of the motion for issuance of the arrest warrant, Connell did not include a representation as to whether plaintiff could be personally served. *See* ORS 33.055(5)(a).[5]

---

[3] The record reflects that Creditors' past practice generally had been to advise the court (apparently through a business agent) of a judgment debtor's nonappearance or noncompliance, rather than to retain counsel for that purpose. The local judges often, on their own motion or that of Creditors, would issue a bench warrant without the necessity of a formal filing. At about the time in question, however, the judges apparently adopted a policy of requiring written motions and requests for relief by judgment creditors. Because of that change in the formality of the procedure, Creditors retained an attorney to represent its interests in this matter.

[4] Connell's affidavit states that he met with the district court judge "on at least one occasion to discuss the procedure which the court wished to follow in obtaining compliance with court ordered judgment examinations." The affidavit is unclear as to whether the discussion occurred as part of the *ex parte* hearing involved in this case or was a general discussion unrelated to any particular case. The timing of that meeting is not significant to our resolution of the issue.

[5] ORS 33.055(5)(a), which applies to arrest warrants for contempt, provides:

"The court may issue an order directing the defendant to appear. Except as otherwise provided in paragraph (b) of this subsection, the defendant shall be personally served with the order to appear in the manner provided in ORCP 7 and 9. The court may order service by a method other than personal service or issue an arrest warrant if, based upon motion and supporting affidavit, the court finds that the defendant cannot be personally served."

The trial court took Connell's motions under advisement. Approximately 10 days later, the court entered an order directing that a bench warrant issue and that, upon arrest, plaintiff be brought before the court to show cause why he should not be held in contempt. The order signed by the court was the same one that Connell had drafted and submitted with his motion. In signing it, however, the court hand-modified it by striking out certain text and by inter-lineating new text in places. After the order was signed and filed, a bench warrant issued. Plaintiff was not immediately arrested, however, because by then he was living in Arizona. Some two years later, he returned to Oregon and was arrested on the warrant. Upon his arrest, he was transported to jail, where he posted bail and was released from custody after approximately nine hours.

Plaintiff filed this action, seeking to hold Connell directly and Creditors vicariously liable for false imprisonment.[6] In moving for summary judgment, plaintiff argued that liability attaches as a matter of law on these facts, because Connell intentionally instigated an arrest pursuant to a warrant that was "void" due to noncompliance with the personal service requirements of ORS 33.055(5). Defendants cross-moved for summary judgment, arguing that the warrant was not void, but that, even if it was, Connell should not be liable as long as he acted in good faith.

In granting summary judgment for defendants, the trial court agreed that the warrant was procedurally defective, but it determined that the defect was not jurisdictional in nature. The trial court further concluded:

"The court [that issued the arrest warrant], of course, is absolutely immune under any stretch of the facts. It would be inequitable to hold accountable an attorney, who was at most indirectly responsible for plaintiff's alleged injury, while holding harmless the entity who was directly responsible for the judicial decision which plaintiff claims led to his injury. The district court's involvement here was not merely ministerial, and it was the judge himself who chose

---

[6] There is no dispute between the parties as to Creditors' vicarious liability in this case.

to exercise his discretion in favor of the bench warrant process. Neither the attorney nor his client should be held accountable for the court's decision in that regard under these circumstances."

On appeal, the parties renew the arguments they made below.

■■ The basic principles that apply to an action for false imprisonment (also called false arrest) are familiar and well settled. The gravamen of the claim is "the unlawful imposition of restraint on another's freedom of movement." *Buckel v. Nunn*, 133 Or App 399, 405, 891 P2d 16 (1995). The tort has four elements: (1) defendant must confine plaintiff; (2) defendant must intend the act that causes the confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful. *Lukas v. J.C. Penney Co.*, 233 Or 345, 353, 378 P2d 717 (1963); *Walker v. City of Portland*, 71 Or App 693, 697, 693 P2d 1349 (1985).

■■ As a general proposition, the fact that an arrest is made pursuant to a warrant defeats a claim of unlawful imprisonment, because the warrant provides a form of privilege or justification to interfere with a plaintiff's liberty. *Restatement (Second) of Torts* § 122 (1965); *see generally Neimitz v. Conrad*, 22 Or 164, 165, 29 P 548 (1892); *Napier v. Sheridan*, 24 Or App 761, 765, 547 P2d 1399 (1976). The burden therefore falls on the plaintiff to demonstrate the warrant's invalidity and to overcome any privileges or immunities that attach by virtue of it. *See Brown v. Meier & Frank Co.*, 160 Or 608, 614-15, 86 P2d 79 (1939) (arrest pursuant to judicial process is presumptively lawful).

■ As a threshold matter, defendants dispute whether the arrest warrant in this case was invalid at all, arguing that compliance with ORS 33.055(5) was not necessary. We disagree. Under ORS 23.720(2)(c), a judgment debtor who fails to comply with a court ordered debtor examination is subject to the contempt procedures of ORS chapter 33. In turn, ORS 33.055(5)(a) provides that the court may serve a person with an order to appear on a contempt charge, or the court may issue an arrest warrant "if, based upon motion and

supporting affidavit, the court finds that the defendant cannot be personally served." *Id.*[7] A finding of inability personally to serve the person to be arrested thus is in the nature of a procedural prerequisite, one that conditions the court's authority to act. Because that requirement is well within the legislature's ability to impose, the district court was obligated to follow the statute and make a finding of inability personally to serve plaintiff as a predicate for issuing the arrest warrant.[8] The failure to do so rendered the warrant procedurally defective and "invalid" in that sense. *Restatement (Second) of Torts* § 122 (a warrant is valid when all proceedings necessary for its proper issuance have duly taken place).

■ The question thus is whether, under these facts, Connell and his client can be liable for seeking issuance of what proves to have been an invalid warrant. Consistent with principles of joint and several liability for torts generally, liability for false imprisonment extends not only to the person who directly confines a plaintiff, but equally to one who instigates the confinement by directing, requesting, inviting or encouraging it. *Pearson v. Galvin*, 253 Or 331, 335-37, 454 P2d 638 (1969) (adopting *Restatement (Second) of Torts* § 45a, comment c (1965)). Here, there is no dispute that Connell "instigated" plaintiff's confinement, in the sense that he filed a motion calling the court's attention to the alleged contempt and asking the court to issue a warrant for plaintiff's

---

[7] The requirement of a finding that the defendant cannot be served personally was added to the statute in 1991. Or Laws 1991, ch 724, § 5.

[8] We reject defendants' argument that the requirement of personal service may be disregarded on the theory that courts have inherent authority to enforce their orders through their powers of contempt. Although the legislature is not entitled substantially to impair or destroy the courts' contempt power, the legislature may prescribe reasonable procedures for the exercise of that authority. *State ex rel Oregon State Bar v. Lenske*, 243 Or 477, 495, 405 P2d 510, 407 P2d 250, *cert den* 384 US 943 (1966); *State v. Driscoll*, 151 Or 363, 367-68, 50 P2d 581 (1935). The predicate finding that a contemnor cannot be served personally is a reasonable procedural requirement, and is therefore constitutional.

Nor are we persuaded of the validity of the distinction, apparently relied on by Connell and the trial court at the time the warrant issued, between the general authority to bring a noncomplying judgment debtor before the court and the specific authority to bring that individual before the court pursuant to the court's contempt authority. In any event, the distinction is beside the point in this case. What the court actually *did* here was issue a warrant pursuant to its contempt authority that is, the warrant expressly directed plaintiff's arrest so that he could be brought before the court to show cause why he should not be held in contempt.

arrest. The more narrow issue and the question of first impression in Oregon is whether some form of privilege or immunity properly should attach when an attorney, in pursuit of a client's interests, in good faith successfully procures issuance of an arrest warrant that is procedurally defective.

The general rule, which seems to be followed without exception, is that for most irregularities in a warrant, an attorney enjoys a form of immunity or privilege[9] that protects him or her from personal liability for false imprisonment if, while acting on behalf of a client, the attorney procures the arrest of a third person. *See generally Waugh v. Dibbens*, 61 Okla 221, 160 P 589 (1916); 32 Am Jur 2d *False Imprisonment* § 110 (1995) (citing representative cases). The rule is similar to the protection extended to a judge who issues the arrest warrant, except that the attorney's privilege is not absolute, but rather is limited to actions taken in good faith and that otherwise do not involve maliciousness or deliberate misadministration of justice. *Id*.

The protection from liability is rooted in policy. For one, it encourages resort to judicial authority:

"The weight of modern authority is that where the defendant has attempted to comply with legal requirements, and has failed to do so through no fault of the defendant's own, false imprisonment will not lie, and the remedy is malicious prosecution. The policy is to give the defendant the privilege of making reasonable efforts to bring the case properly before the court, without liability unless the defendant's reason for doing so is an improper one." W. Page Keeton,

---

[9] Prosser and Keeton suggest that the better term is "privilege":

" 'Privilege' is the modern term applied to those considerations which avoid liability where it might otherwise follow.* * * [I]t applie[s] to any circumstance justifying or excusing a prima facie tort, such as battery, assault, or trespass; it signifies that the defendant has acted to further an interest of such social importance that it is entitled to protection, even at the expense of damage to the plaintiff. The defendant is allowed freedom of action because his own interests, or those of the public, require it, and because social policy will best be served by permitting it. The privilege is bounded by current ideas of what will most effectively promote the general welfare." W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 16 at 108-09 (5th ed 1984).

We similarly have preferred the term "privilege" over "immunity," *Franson v. Radich*, 84 Or App 715, 718 n 3, 735 P2d 632 (1987), and we therefore use that term throughout this opinion.

*Prosser and Keeton on the Law of Torts* § 11 at 54 (5th ed 1984).

*See also* Harper and James, *The Law of Torts* § 4.11 (1956).[10] Of equal importance, the privilege preserves the relationship between the attorney and the client. It ensures that the attorney is able to pursue a client's interests zealously, consistent with the attorney's ethical responsibilities (*see* DR 7-101), as long as the attorney acts in good faith. *E.g., Langen v. Borkowski*, 188 Wis 277, 206 NW 181, 190 (1925); *see generally* 32 Am Jur 2d *False Imprisonment* § 110 at 146. In that regard, the privilege parallels the immunity given lawyers for defamation in the course of judicial proceedings, which similarly serves to protect the attorney-client relationship, except that the privilege in the area of defamation is absolute. *See, e.g., Chard v. Galton*, 277 Or 109, 559 P2d 1280 (1977) (discussing absolute privilege for communications during judicial proceedings and reasons for it). *See generally Wollam v. Brandt*, 154 Or App 156, 961 P2d 219 (1998).

Finally, the privilege is an acknowledgment that the attorney is a quasi-judicial officer, who, in addition to representing the individual interests of his client, plays an important role in the administration of justice:

"It is in the interest of the proper administration of justice that counsel be courageous and fearless in the discharge of their duties; and, in fact, fearlessness and courage are among the principal elements that lead to professional success. As we cannot have a strong court without courageous and fearless judges, so it is impossible to have a strong bar without courageous and fearless attorneys. Both operate together in a common cause, as parts and parcels of the judicial system, to bring about the best results." *Langen*, 206 NW at 191.

---

[10] As stated by Harper and James,

"While the arrest of a citizen without a warrant may, in a particular case, be no more serious than his arrest on process, the privilege to make it is a far more serious matter. The requirements of process afford highly desirable safeguards. In the first place, the complaint is usually under oath. The possibility of prosecution for perjury presumably tends to sober reflection and to discourage thoughtless and ill-founded accusations. In the next place, the facts sworn to by the accuser are subjected to the critical examination of an officer more or less trained and versed in the criminal law." Harper and James, *The Law of Torts* § 4.11 at 342.

*See also* 32 Am Jur 2d *False Imprisonment* § 110 (stating proposition; citing representative cases). From that vantage point, the protection from liability and the reason for it are akin to the privilege recognized for witnesses in proceedings that result in confinement, who are shielded from liability for false imprisonment as long as they do not act in bad faith or with malice, in recognition of the importance of their role in the judicial process. *Springer v. Steiner*, 91 Or 100, 178 P 592 (1919) (recognizing general privilege for witnesses; holding that physician who testified in civil commitment proceedings should not be liable for false imprisonment in the absence of bad faith or malice).

There is a split of authority, however, as to whether an attorney's privilege or immunity should be abrogated where the court issuing the arrest warrant did so without jurisdiction. *See generally* J. Kraut, Annotation, *Liability of Attorney Acting for Client, for False Imprisonment or Malicious Prosecution of Third Party*, 27 ALR 3d 1113 (1969 & 1995 Supp). One branch of cases holds that if an arrest warrant is "void" and not merely voidable, an attorney who procures the warrant may be liable regardless of his or her good faith. *Id*. at 1122-24. *See, e.g., Pomeranz v. Class*, 82 Colo 173, 257 P 1086 (1927). That approach appears to be based on the rationale that a "void" warrant does not confer even the color of legal authority and, consequently, no privilege attaches. *See Kress & Co. v. Powell*, 132 Fla 471, 483, 180 So 757, 762 (1938).

Other courts, however, maintain the privilege for an attorney acting in good faith, even if the warrant is void. *See, e.g., Bossin v. Towber*, 894 SW2d 25 (Tex App 1994) (discussing cases and so holding); *Melton v. Jenkins*, 50 Ga App 615, 178 SE 754 (1934). Those courts seem to reason that the policies in favor of protecting an attorney for his or her good faith efforts in taking the matter before a magistrate are not altered by the distinction between a void and merely voidable warrant. *Bossin*, 894 SW2d at 32; *Melton*, 178 SE at 754. *See also Ward v. Wilson*, 339 Md 701, 664 A2d 916 (1995) (without wrongful or improper motive, tort of false imprisonment will not lie against one who invokes the independent machinery of the judicial system where warrant is at least facially

valid). Prosser appears to endorse that view. *Prosser and Keeton on the Law of Torts* § 119 at 886 (false arrest lies only where no legal process has issued; if the arrest is pursuant to legal process, the proper action is malicious prosecution).

We believe that the latter rule is the better one. The fact that a warrant proves to have been void due to a jurisdictional error on the issuing magistrate's part does not, in itself, undermine the policy reasons for having the privilege in the first place. That is, as long as the attorney acted in good faith, the essential rationales for the privilege (*e.g.*, promoting resort to judicial process, meeting ethical responsibilities to client, acknowledging quasi-judicial role of attorney in court proceedings) retain full force. Moreover, maintaining the privilege for good faith actions by the attorney, regardless of whether the warrant is deemed void or merely voidable, better harmonizes with Oregon law generally. There is no logic in imposing liability on an attorney whose actions "instigate" an arrest pursuant to a judicially issued warrant while insulating from liability a witness who testifies in support of facts that lead to confinement,[11] the officer or jail officials who confine a person pursuant to a facially valid but ultimately void warrant,[12] and a private citizen who brings a potential civil or criminal offense to the attention of the judge or other public official.[13] Finally, maintaining a good-faith privilege has special virtue in a contempt context. To be sure,

[11] *E.g.*, *Springer*, 91 Or at 110-13 (mental commitment case; emphasizing importance of insulating physician witnesses from liability, given their quasi-judicial role, the value of fully informed judicial decisions, and the fact that any confinement is ultimately directly caused by an exercise of judicial discretion).

[12] *E.g.*, *Higgins v. Redding*, 34 Or App 1029, 1032-33, 580 P2d 580 (1978) (confinement by jail personnel pursuant to a warrant "fair on its face" was privileged, even if warrant was void for lack of jurisdiction).

[13] Oregon follows the widely accepted principle that a person is not liable for false arrest if he or she merely lays facts before a law enforcement or judicial officer who makes the arrest on the basis of the officer's own judgment and discretion. *Delp v. Zapp's Stores*, 238 Or 538, 395 P2d 137 (1964). This particular case highlights the irony that would follow if a diminished privilege were to apply to an attorney acting on a client's behalf. Here, in seeking an arrest warrant, Connell relayed the facts that Creditors personally would have relayed about plaintiff's lack of cooperation during the debtors examination. Had Creditors presented that information to the court directly rather than through counsel, it could not be liable. Under the rule proposed by plaintiff, Creditors' attorney can be held liable and Creditors, in turn, would be vicariously liable for its attorney's actions. Plaintiff's proposed rule obviously penalizes the attorney-client relationship.

the attorney's action in bringing a possible contempt to the court's attention indirectly protects the client's private interests. But it serves first and foremost to vindicate the authority of the court itself. Subjecting the attorney to liability for advising the court in good faith of a possible contempt would chill such information and tend to undermine the court's contempt authority.[14]

For all of those reasons, we conclude that the proper action in a case of this kind is a claim for malicious prosecution or wrongful initiation of civil proceedings, both of which require a showing of malice or bad faith. *See Erlandson v. Pullen*, 45 Or App 467, 470-71, 608 P2d 1169 (1980) (identifying elements). The gist of the claim is where it needs to be: on the defendants' conduct in initiating the judicial process.

> "Where a citizen procures the issuance of a warrant by a magistrate by making a formal charge of crime, he is not liable in an action for false imprisonment for the resulting arrest when the warrant is served. Here, as in the former case, in fact he has 'caused' the other's imprisonment but he has not done so within the meaning of the law. He has done so not by procuring action on his own behalf by a third person, but by setting in motion the machinery of the law against the other in the name and on behalf of the public. In the one case, the defendant acts as an individual; in the other as a member of the community. In the latter case, the official action of an important judicial officer has intervened between the conduct of the accuser and the arrest. The action for false imprisonment will not lie. The only protection available to the accused is the action for malicious prosecution[.]" Harper and James, *The Law of Torts* § 4.11 at 341-42.

The *Restatement* endorses the same approach, imposing liability for "instigating" civil proceedings that cause another to be arrested only where there is bad faith or a primary purpose "other than that of securing the proper adjudication of the claim on which the proceedings were based." *Restatement*

---

[14] The quasi-official role of an attorney in this context is underscored by Oregon's statute and by the fact that contempt is a public offense rather than a purely private remedy. In conferring standing on a "party aggrieved by an alleged contempt of court" to bring the facts of an alleged contempt to the court's attention, the statute places that party (or its attorney) on the same footing with district attorneys, city attorneys, and the Attorney General. *See* ORS 33.055(2).

*(Second) of Torts* § 677; *see also* § 37, comment b (malice required to impose liability for instigating criminal proceedings intending to cause an arrest). Thus, whether the claim is styled as one for false imprisonment or one for malicious prosecution (or its counterpart, wrongful initiation of civil proceedings), an attorney's liability for instigating the arrest depends on alleging and proving bad faith or malice.

Even if we were to hold that the privilege must give way where an arrest warrant is void and not merely voidable,[15] the procedural irregularity at issue in this case would not deprive the court of jurisdiction. In contending otherwise, plaintiff relies on cases involving violations of constitutional due process notice requirements that render final judgments and other orders of affirmative relief "void." *See Scarth v. Scarth*, 211 Or 121, 126, 315 P2d 141 (1957); *Cooley v. Fredinburg*, 144 Or App 410, 927 P2d 124 (1996), *mod* 146 Or App 436, 934 P2d 505 (1997). However, those due process principles do not control jurisdiction to issue an arrest warrant.[16] The proper reference point is the body of Oregon case law dealing directly with a court's jurisdiction to issue arrest warrants.[17]

---

[15] The only Oregon case suggesting such a rule is *Nemitz v. Conrad*, 22 Or 164, 165, 29 P 548 (1892), where the court declared generally that "void process is no justification for an arrest, but an irregular and voidable one is a complete defense until set aside." The statement was *dictum*, inasmuch as the court held that the warrant in question was not void and its holding was premised on that finding.

[16] Both the state and federal constitutions authorize warrants if they are issued by a magistrate, upon probable cause. Or Const, Art I, § 9; US Const, Amend IV. It would be a remarkable proposition, to say the least, to import from the due process clause an analysis that an arrest warrant is "void" unless the issuing court first finds that the person to be arrested could not be served with notice that he or she voluntarily should come forward to answer civil or criminal charges. Plaintiff, not surprisingly, cites no authority so holding.

[17] For the same reason, cases involving jurisdiction to enter *ex parte* receivership orders (upon which plaintiff places considerable reliance) are not apt. *See McKinney v. Nayberger et al*, 138 Or 203, 295 P 474, 2 P2d 111, 6 P2d 228 (1931); *Clausen v. Carstens*, 83 Or App 112, 730 P2d 604 (1986). Moreover, where due process defects are not involved, the Supreme Court has held that a judgment is void for lack of jurisdiction only where a court lacks jurisdiction over the parties or the subject matter; other defects may be in excess of the court's proper authority, but they do not render it void. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 383, 823 P2d 956 (1991). That holding casts doubt on whether the procedural defects in *McKinney* and *Carstens* would continue to be considered jurisdictional.

On that question, the law is well settled. To abrogate a judge's absolute immunity for issuance of an arrest warrant, there must be no judicial business properly before the judge, rendering the warrant not "merely the erroneous exercise of colorable judicial power, but * * * the usurpation of judicial power." *Utley v. City of Independence*, 240 Or 384, 390, 402 P2d 91 (1965). Said another way, the matter on which the warrant issues must be *wholly* beyond the court's jurisdiction, as where there is no subject matter or personal jurisdiction whatsoever. *E.g., Rees v. State of Oregon*, 133 Or App 154, 890 P2d 1012 (1995); *Germeroth v. City of Oregon City*, 83 Or App 533, 733 P2d 32 (1987). If the analysis of an attorney's liability for seeking an arrest warrant properly turns on the court's jurisdiction to issue the warrant, it only makes sense to examine the jurisdictional question using the same test that applies to the court itself.

Here, the issuing magistrate plainly had subject matter as well as personal jurisdiction, a point that plaintiff does not dispute.[18] Therefore, the court had jurisdiction or at least the color of jurisdiction. Any defect in the warrant caused by issuing it without a finding that plaintiff could not be personally served was at most a defect in the court's exercise of its authority. Under *Utley, Germeroth*, and *Rees*, that would not be a basis to impose liability on the issuing magistrate. Nor would it be a basis to impose liability on an attorney who presents the matter to the judge for the judge independently to assess.

Affirmed.

---

[18] Plaintiff correctly concedes that the money judgment against plaintiff gave the court ongoing personal jurisdiction to enforce the judgment. Nor is there any question of subject matter jurisdiction, inasmuch as courts have both statutory and inherent authority to enforce their judgments and other orders through contempt proceedings.