Argued and submitted February 19, reversed and remanded October 15, 1986

LAWRENCE et al,
*Appellants,*

*v.*

UNDERWOOD et al,
*Respondents.*

(45490; CA A33156)

726 P2d 1189

Brian D. Green, Lincoln City, argued the cause for appellants. With him on the briefs was Lovejoy & Green, Lincoln City.

Frederick Ronnau, Lincoln City, argued the cause for respondents. With him on the brief was Kulla & Ronnau, P.C., Lincoln City.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Warden, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiffs appeal a judgment for defendants entered after the trial court granted defendants' motion for a directed verdict at the close of plaintiffs' case. The issue is whether the court erred in granting that motion against plaintiffs' claim for fraudulent misrepresentation.[1] We reverse and remand.

We will recite the evidence in the light most favorable to plaintiffs, giving them the benefit of every reasonable inference supported by the record. *Foster v. Schnell Refrigeration Co.,* 280 Or 411, 414, 571 P2d 497 (1977). Plaintiffs are in the business of purchasing run-down properties and renovating them into income-producing properties. In October, 1980, they made an offer to purchase a six-unit motel from Transpacific Corporation. Defendants were the previous owners of the motel and held a vendor's lien on the property. Transpacific had rented the units on a month-to-month basis. Plaintiffs intended to upgrade the motel and operate it on a night-to-night basis. However, at the time of their offer, the property was not zoned for that use. Consequently, one of the conditions of plaintiffs' offer was that the property would have to be rezoned to permit night-to-night use. Transpacific had already applied for a zone change at the time of plaintiffs' offer.

Another condition of the offer was that plaintiffs obtain financing. A bank agreed to loan plaintiffs $30,000 to close the transaction, provided that (1) the zone change be made and recorded in the county records and (2) defendants would subordinate their vendor's lien to the bank's mortgage. It also agreed to loan plaintiffs an additional $20,000 to use in renovating the motel. The bank intended that its mortgage for that $20,000 would be third in priority behind its first mortgage and defendants' lien.

Plaintiffs' offer lapsed in November, because the zone change had not been obtained. In late November or early December, the county planning commission approved the zone change. In January, 1981, plaintiffs met with defendants and discussed the prospects of subordinating defendant's lien

---

[1] Plaintiffs sued defendants for breach of contract and fraudulent misrepresentation. They do not challenge the trial court's ruling with respect to their claim for breach of contract.

to the bank's mortgage. They discussed fully plaintiffs' backgrounds, their plans for the motel, the financing that the bank had conditionally approved and the nature and purpose of a subordination agreement. On February 2, plaintiffs made a second offer to purchase the motel. On February 6, against their attorney's advice, defendants signed an agreement subordinating their lien to the bank's first mortgage and sent it to the escrow officer handling the sale of the motel. The closing, scheduled for February 6, was not completed, because the county planning commission had not signed and recorded the zone change. The escrow officer returned the original subordination agreement to defendants. They received it on February 14, and defendant James Underwood crossed out the signatures, wrote "void" on the document and placed it in their personal files.

When the sale did not close on February 6, plaintiffs investigated the possibility of obtaining a short-term loan so that the transaction could be closed. The bank agreed to loan $23,500 on an unsecured 90-day promissory note[2] and that, when the note matured, it would renegotiate it into a long-term real estate loan, if defendants would then subordinate their lien to the mortgage. Plaintiffs told defendants about that agreement, and defendants replied that they would provide the subordination agreement when the 90-day note matured. Plaintiffs did not know that defendants had received back the original subordination agreement, and defendants did not tell them that they had marked that agreement "void."

Plaintiffs made a third offer to purchase the motel and obtained the 90-day loan from the bank; the transaction closed on March 2. The escrow officer told defendants that the subordination agreement would not be needed at that time but that plaintiffs might need it at a later date. Defendants stated that that would not be a problem. When the 90-day note matured, plaintiffs contacted defendants to inquire about the subordination agreement. Defendants told plaintiffs that they had voided it and that they had changed their minds and would not provide the agreement.

Plaintiffs defaulted on the 90-day note, and the bank

---

[2] The bank would not loan plaintiffs the full $30,000 they needed to close the transaction on an unsecured, short-term note. Plaintiffs borrowed $6,500 from another bank to make up the difference.

obtained a judgment against them. As a result, plaintiffs' credit rating suffered. They were unable to obtain the $20,000 needed to renovate the motel and were unable to operate it on a night-to-night basis. They claimed that they had suffered lost profits as a result and had sold the motel for less than they allegedly could have had they been able to renovate it.

■    To establish a fraudulent misrepresentation, plaintiffs have the burden of proving (1) a representation, (2) its falsity, (3) its materiality, (4) defendants' knowledge of its falsity or their recklessness in that respect, (5) defendants' intent that plaintiffs act on it in the manner reasonably contemplated, (6) plaintiffs' ignorance of its falsity, (7) their reliance on its truth, (8) their right to rely on it and (9) their damage. *Musgrave et ux. v. Lucas et ux.,* 193 Or 401, 410, 238 P2d 780 (1951). They have the burden of proving those elements by clear and convincing evidence, which means that the truth of the facts asserted is found to be highly probable by the factfinder. *Coy v. Starling,* 53 Or App 76, 80, 630 P2d 1323, *rev den* 291 Or 662 (1981). Because the hearing on defendants' motion for directed verdict was not transcribed, we do not know the basis for the trial court's ruling. However, defendants pose the issue as whether there was sufficient evidence to prove (1) defendants' fraudulent intent, (2) plaintiffs' reliance and (3) plaintiffs' damages.

■ ■    The allegedly fraudulent misrepresentation was defendants' assurance that they would subordinate their lien to the banks' mortgage when the 90-day note matured. More specifically, plaintiffs claim that defendants promised to provide the bank with the particular subordination agreement that they had signed. They failed to perform that promise. However, the failure to perform a promise does not *ipso facto* constitute a fraudulent misrepresentation. *Reimann v. Brent,* 238 Or 415, 395 P2d 284 (1964). There must be evidence that, at the time when they made the promise, defendants did not intend to perform it, *Reimann v. Brent, supra,* or that they made the promise with reckless disregard as to whether they could perform. *Elizaga v. Kaiser Found. Hospitals,* 259 Or 542, 487 P2d 870 (1971). The requisite fraudulent intent or "reckless disregard" may not be inferred from the mere fact of nonperformance; other circumstances of a substantial character must be shown in addition to nonperformance before

such an inference may be drawn. *Conzelmann v. N.W.P. & D. Prod. Co.,* 190 Or 332, 352, 225 P2d 757 (1950).

■    Plaintiffs rely on the facts that defendants had already written "void" and crossed out their signatures on the subordination agreement at the time when they promised to make it available as proof that in fact they had no intention of performing. When asked why he wrote "void" on the agreement, defendant James Underwood testified, "Well, I always was told when you want to keep a paper in your files that you wasn't going to use any more, you put 'void' on it and the date."

A motion for a directed verdict should be granted only if it is shown that reasonable persons could draw but one inference from the evidence and that that inference supports the moving party. *James v. Carnation Co.,* 278 Or 65, 69, 562 P2d 1192 (1977). If reasonable persons could differ as to the inferences to be drawn from the evidence, the motion should be denied. *Resser v. Boise Cascade Corporation,* 284 Or 385, 390, 587 P2d 80 (1978). In this instance, a jury could reasonably find that defendants had promised to subordinate their lien when the 90-day note matured. In the light of what they had done with the subordination agreement that they had signed and their reason for doing so, reasonable persons could reasonably infer that they had no present intention of later providing *that* agreement. Reasonable persons could also infer that that evidence proved that they had no intention of later providing *any* subordination agreement. A jury could reasonably find that defendants had promised to provide the specific subordination agreement that they had earlier signed. There is evidence that they had no intention of providing that agreement. The evidence was sufficient to present a jury question on the issue of fraudulent intent.

Defendants claim that there was no evidence of plaintiffs' reliance on the representation. There was. Plaintiff Charles Lawrence testified that they would not have purchased the motel if defendants had not promised to subordinate their lien.

■■    We next consider the evidence of plaintiffs' damages. They sought the lost profits that allegedly resulted from their inability to renovate the motel and operate it on a night-to-

night basis.[3] Loss of profits is a proper element of damages in a tort action when the loss is the direct and necessary result of the defendant's conduct and the loss is established with reasonable certainty. *Cluck et ux v. Fish et al,* 230 Or 63, 66, 368 P2d 626 (1962). Plaintiffs need not prove the exact amount of lost profits; it is sufficient if the factfinder can reach a reasonable conclusion from the evidence. *Von Ravensberg v. Houck-Carrow Corp.,* 60 Or App 412, 417, 653 P2d 1297 (1982). A trial court should take the issue from the jury only when the evidence is clearly insufficient to establish the claim. *Welch v. U.S. Bancorp,* 286 Or 673, 704-05, 596 P2d 947 (1979). If reasonable persons could be persuaded by the evidence, the jury must be allowed to make the decision. *Welch v. U.S. Bancorp, supra,* 286 Or at 705.

■    There was evidence that, as a result of defendants' failure to subordinate their lien, plaintiffs were unable to obtain financing to renovate the motel; consequently they operated it at a loss, instead of breaking even, as they could have had they been able to operate it on a night-to-night basis; and they eventually sold the motel for less than they could have had they been able to renovate it and operate it on a night-to-night basis. Defendants were aware of plaintiffs' plans for the motel and that their success in obtaining financing was dependent on defendants' subordination of their lien. A jury could have found that plaintiffs damages were the direct and necessary result of defendants' actions.

Plaintiffs also presented evidence of lost profits to a reasonable certainty. They relied on the testimony of Gilbert to prove their damages. Gilbert had a Bachelor's Degree in economics and a Master's Degree in business and had approximately 18 years of experience as a business appraiser and consultant. He testified that plaintiffs would not have suffered a loss had they been able to renovate the motel and operate it on a night-to-night basis. He also testified that plaintiffs actually operated the motel at a loss of approximately $63,000. As to their subsequent sale of the motel, he testified that they sold it for approximately $47,000 less than they could have had they been able to operate it on a night-to-night basis. He based his opinions on the actual operation of

---

[3] They also sought punitive damages. The parties do not present any argument concerning that issue.

what he considered to be a comparable motel in the same town, financial data concerning the motel industry and small businesses, plaintiffs' income and expense statements and depreciation schedules, interviews with plaintiffs, their accountant and the head of an appraisal company in Portland and the documents concerning plaintiffs' sale of the motel. The documents he relied on for his testimony were introduced in evidence.

Although on cross-examination defendants exposed some weaknesses in Gilbert's analysis and the data on which he relied, his testimony and the supporting data were not "clearly insufficient" to prove lost profits to a reasonable certainty. Those weaknesses, if any, go only to the weight of his testimony. *Hardwick v. Dravo Equipment company,* 279 Or 619, 625-26, 569 P2d 588 (1977). That plaintiffs did not provide any evidence that the motel had operated profitably in the past is not fatal; they could recover in the absence of that proof, if they otherwise provided evidence which proved their losses to a reasonable certainty. *Welch v. U.S. Bancorp, supra; Schafer v. Sunset Packing,* 256 Or 539, 474 P2d 529 (1970); *Von Ravensberg v. Houck-Carrow Corp., supra.*

The evidence was sufficient to present jury questions on the issues of fraudulent intent, reliance and damages. The trial court erred in granting defendants' motion for a directed verdict with respect to plaintiffs' claim for fraudulent misrepresentation.

Reversed and remanded.