Argued and submitted October 4, 1993, affirmed February 15, 1995

John R. ROCK,
Mary A. Rock,
dba Avontti Pizza & Food,
*Respondents,*

*v.*

Michael FRANCIS,
*Appellant.*

(CV91195; CA A77779)

889 P2d 1337

Ralph C. Spooner argued the cause for appellant. With him on the briefs was Spooner & Much, P.C.

Keith Hayes argued the cause and filed the brief for respondents.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

## LANDAU, J.

Defendant appeals a judgment entered after a jury returned a verdict against him for legal malpractice. We affirm.

Plaintiffs operated "Avontti Pizza & Food" (Avontti), a wholesale pizza business, which prepared fresh pizzas for retail grocery stores. In 1988, Avontti obtained a major new account, which required plaintiffs to expand their operation significantly. They obtained a loan, secured by their home, to finance the expansion. Later in 1988, plaintiffs received a shipment of moldy pizza crust from their supplier, Canadian Crust. Because of the bad crust, Avontti lost its major new account and was required to revert to its original operating size. Meanwhile, Canadian Crust sued for payment on the bad crust. Plaintiffs represented themselves in that litigation and lost. At the same time, plaintiffs accumulated other large debts, including unpaid payroll, personal income taxes, real estate taxes and the home mortgage, on which they had made no payments for several months. They were in immediate danger of losing both their home and their business to creditors.

Plaintiffs consulted defendant, an attorney in general practice, about filing for bankruptcy. Defendant prepared a petition for Chapter 13 bankruptcy. The petition was incomplete, but it nevertheless had the effect of triggering an automatic stay of all collection and foreclosure proceedings. The bankruptcy court sent a deficiency notice, allowing plaintiffs 15 days to correct the petition. On the fifteenth day, defendant filed an amended petition. However, it, too, was incomplete, and the bankruptcy court rejected it. Defendant then recommended an alternate approach to work out plaintiffs' finances, to which they agreed. The bankruptcy petition was dismissed, and the automatic stay was lifted. Plaintiffs' creditors descended, and plaintiffs quickly lost both their home and their business. Plaintiffs then retained other counsel, who ultimately obtained a return of their business equipment.

Plaintiffs sued defendant for legal malpractice. They alleged that, because defendant failed to obtain for them the protection afforded by a Chapter 13 bankruptcy, they lost

their home and their business. Plaintiffs claimed entitlement to damages for the loss of equity in their home, which was sold at a depressed price due to foreclosure. Plaintiffs also claimed lost "future income" and lost goodwill value from the business.

At trial, plaintiffs offered the testimony of an expert in bankruptcy law, Olsen, who said that plaintiffs qualified for a Chapter 13 filing, and were entirely capable of paying their creditors under a Chapter 13 plan. Olsen testified that, had defendant properly filed the petition for Chapter 13 bankruptcy, plaintiffs would not have lost their home or their business.

Plaintiffs also offered testimony that the value of their home at the time of sale was $78,000, and that it was sold in foreclosure for only $65,000 to satisfy debts.

As for their business, plaintiffs' expert witness, Kysar, testified that the total value of plaintiffs' business was $131,000. Deducting $39,100 for the value of the equipment that plaintiffs ultimately had returned to them, Kysar concluded that the net value was $92,700. Of that figure, Kysar testified that $84,000 constituted goodwill value, based on a capitalization of earnings approach, and other factors, such as the long period of time Avontti stayed in business, in spite of the volatile nature of the market. He also testified that, because of the forced liquidation of the business, Avontti lost approximately $40,000 in profits. In reaching those conclusions, Kysar considered ten years of plaintiffs' tax returns, financial statements for Avontti and interviews with plaintiffs and one of their employees. Kysar acknowledged that the tax returns for Avontti showed the following profits and losses:

| | |
|---|---|
| 1980 | $ 5,423 |
| 1981 | 2,518 |
| 1982 | (1,004) |
| 1983 | (801) |
| 1984 | 1,470 |
| 1985 | 7,055 |
| 1986 | (12,452) |
| 1987 | (21,243) |
| 1988 | (21,945) |
| 1989 | (28,905) |

Nevertheless, he testified that tax returns are a poor indicator of actual profits and losses, because they do not take into account a number of real world factors that affect profitability. Kysar made a number of adjustments to reflect those factors. For example, he made adjustments for depreciation of equipment and for the fact that plaintiffs had claimed on their tax returns greater expenses—specifically, food costs—than was reasonable.

Defendant objected to Kysar's testimony and moved to strike it, on the ground that there was no factual basis for the assumptions the expert made in adjusting the tax return information to arrive at a profitability calculation. The trial court denied the motions.

Plaintiff John Rock then testified in support of Kysar's assumptions. In particular, he testified that Avontti food costs were extraordinarily high because plaintiffs were paying off what he characterized as "old food debt," that is, food costs from previous years.

Plaintiffs moved to amend their complaint, to change their claim for lost "future income" to one for "lost profits." Over defendant's objections, the trial court allowed the amendment.

Defendant moved for a directed verdict, which the trial court denied. The jury then returned a verdict in favor of plaintiffs for $49,843. Defendant moved for judgment *n.o.v.*, which the trial court also denied.

On appeal, defendant assigns error to the trial court's denial of his motion for a directed verdict. We may reverse a denial of a directed verdict motion only if there is a complete absence of proof on an essential issue after drawing all reasonable inferences in favor of plaintiffs. *Pacificorp v. Union Pacific Railroad*, 118 Or App 712, 715, 848 P2d 1249 (1993). Defendant argues that the case should not have been sent to the jury, because plaintiffs failed to satisfy the "case within a case" requirement of all legal malpractice actions. *Chocktoot v. Smith*, 280 Or 567, 570, 571 P2d 1255 (1977). According to defendant, there is a complete absence of evidence that defendant's failure to properly file the Chapter 13 petition caused plaintiffs to lose either their house or their

business. Specifically, he argues that the evidence is undisputed that plaintiffs made their own decision to forego filing the Chapter 13 petition, that there is no evidence that they ever had a workable Chapter 13 plan that would have been approved by a bankruptcy court, and that there is no evidence that they could have made the payments required under that plan. In addition, defendant argues that plaintiffs' loss of their business cannot be laid at his feet, when the undisputed evidence is that the business failed because plaintiffs neglected to assert a claim against Canadian Crust for the delivery of moldy pizza crust. Plaintiffs argue that there is at least some evidence on each of the issues defendant contests. We agree with plaintiffs.

First, although there is evidence that plaintiffs decided to forego filing the Chapter 13 petition, there is also evidence that they made that decision on defendant's advice and at his urging. Second, defendant's argument that there is no evidence that plaintiffs ever could have performed under an approved Chapter 13 plan ignores Olsen's testimony that, after reviewing their financial condition, it was his opinion that plaintiffs qualified for Chapter 13 relief, that they had a plan and the means to carry it out. Third, although defendant correctly asserts that there is evidence that the delivery of moldy pizza crust was a substantial contributor to plaintiffs' financial problems, there is also evidence from plaintiffs' bankruptcy expert linking the loss of the business to defendant's failure to obtain bankruptcy protection for plaintiffs. The trial court did not err in denying defendant's motion for a directed verdict.

■ Defendant next assigns error to the trial court's failure to strike plaintiffs' claim for loss of goodwill value of their business. According to defendant, "goodwill is not recognized as an item of damage in legal malpractice cases in Oregon." In support of his argument, defendant relies on *Lawrence v. Underwood*, 81 Or App 533, 726 P2d 1189 (1986). Plaintiffs assert that defendant misreads that opinion and ignores others that allow loss of goodwill in tort actions. We agree with plaintiffs.

In *Lawrence v. Underwood, supra*, we addressed the sufficiency of the evidence to support a claim for lost profits. The subject of goodwill is not mentioned in the opinion at all.

The Supreme Court addressed the availability of goodwill damages in *Levene et ux. v. City of Salem,* 191 Or 182, 199-200, 229 P2d 255 (1951). In that case, the court reviewed a claim in equity that the defendant city had caused various damages to the plaintiffs' business by failing to control drainage that passed by their property. Among the elements of damages the plaintiffs claimed were lost goodwill. The Supreme Court assumed, without deciding, that damages for loss of goodwill are recoverable. It then held that, to be recoverable, there must be evidence concerning the

"length of time the business has been in existence; the nature and character of the business; its success or lack thereof; its average profits; and the probability of its continuance under the same name. Past profits may be established, and the value of the good will estimated therefrom as a basis, subject to being reduced by a showing of a depression in trade or other circumstances that would tend to make the business less valuable." 191 Or at 200. (Citations omitted.)

Applying that standard, the court concluded that the evidence in that case was insufficient to support an award of lost goodwill, because the record contained only "speculation and conjecture" about the plaintiffs' alleged losses. 191 Or at 201.

In *Buck v. Mueller,* 221 Or 271, 351 P2d 61 (1960), the court allowed the plaintiff to proceed on a claim for damages to goodwill. In that case, it affirmed the trial court's decision to grant a motion for a new trial on the ground that the jury had been improperly instructed on the measure of damages to a restaurant business for an alleged breach of a covenant in a written lease. Citing *Levene et ux. v. City of Salem, supra,* the court said that, upon a new trial, the plaintiff would be entitled to have its claim for damage to goodwill submitted to a jury, provided the plaintiff produced evidence "that the business had the qualities which are the ingredients of good will." 221 Or at 285. The court's decision has been followed in other cases in which damages for lost goodwill have been allowed, because the evidence relating to the factors listed in *Levene et ux. v. City of Salem, supra,* was sufficient to allow the claims to proceed to the jury. *E.g., Sol-O-Lite Laminating Corp. v. Allen,* 223 Or 80, 93, 353 P2d 843 (1960); *Crowd Management Services, Inc. v. Finley,* 99 Or App 688, 691, 784 P2d 104 (1989). In this case, plaintiffs introduced evidence on each of the relevant factors. The trial

court did not err in declining to strike plaintiffs' claim for damages to goodwill.

■ Defendant next assigns error to the trial court's failure to strike the testimony of plaintiffs' expert, Kysar. According to defendant, plaintiffs failed to provide an evidentiary foundation for the assumptions that Kysar used in calculating Avontti's lost profits. In particular, defendant complains that Kysar assumed that plaintiffs had reported on their tax returns greater food costs than were reasonable. Defendant argues that there is no evidence in the record to support that assumption. Plaintiffs insist that there is testimony in the record to support Kysar's assumption. We agree with plaintiffs.

Kysar testified that one possible basis for his assumption that, for the purposes of calculating the value of the business and the loss of future profits, expenses should be lower than reported for tax purposes is that plaintiffs were paying for more than a single year's worth of food costs. That is, in fact, what plaintiff John Rock testified.

■ Defendant also points out that some of Kysar's adjustments would have the effect of increasing plaintiffs' expenses and, thus, decreasing their profitability. For example, Kysar noted that plaintiffs owned the building that housed Avontti, yet they failed to charge Avontti fair market rent. That may well be so. However, that is an argument that goes to the weight of Kysar's testimony, not its admissibility. The trial court did not err in denying defendant's motion to strike Kysar's testimony.

■ Next, defendant assigns error to the trial court's denial of his motion to strike plaintiffs' claim for damages for the alleged loss of equity in their house. He argues that, because the total proceeds of the sale of the home went to pay plaintiffs' creditors, they have suffered no damages. Plaintiffs argue that defendant ignores the fact that there is evidence that, because of the foreclosure, the sale price of the house was depressed and it was sold for less than it was worth. Again, we agree with plaintiffs.

There was testimony that the house had been appraised at $78,000 and that a quick sale can depress a house's sale price to below market value. There also was

evidence that, at the time of the filing of the original Chapter 13 petition, there was $32,430 in outstanding debt against the house. Defendant insists that plaintiffs also had other obligations at that time. That argument, however, misses the point: Merely because the money from the sale of the house did, in fact, go to the payment of plaintiffs' other debts does not mean that the money from the house *must* have been used for that purpose. A jury reasonably could have found that plaintiffs could have paid those other obligations out of the business income in the Chapter 13 plan, and retained the equity in their home. Indeed, that is precisely what plaintiffs' bankruptcy expert testified. The trial court did not err in denying defendant's motion to strike the claim for damages for the loss of equity in plaintiffs' house.

Defendant's next assignment of error is that the trial court should have granted his motion to strike plaintiffs' claim for any economic damages, because they are based entirely on Kysar's testimony, and his testimony is too speculative to support such a claim. Defendant's arguments are essentially the same as those asserted in support of his contention that Kysar's testimony should have been stricken entirely. We need not address them again. The trial court did not err in failing to strike the claim for economic damages.

■■ Finally, defendant assigns error to the trial court's allowance of plaintiffs' amendment of their complaint at the close of the evidence. We review the trial court's decision for abuse of discretion. ORCP 23B; *Wallace v. Hinkle Northwest, Inc.*, 79 Or App 177, 179, 717 P2d 1280 (1986). The trial court merely allowed plaintiffs to change their claim for "future income" to one for "lost profits." Plaintiffs informed defendant of their intentions to do that earlier in the trial, in order to conform their claim to the testimony of their expert, Kysar. Defendant claims no surprise and identifies no particular disadvantage that resulted from the amendment.

Defendant's only argument is that allowing plaintiffs to recover lost profits and damage to goodwill permits double recovery. He does not assert that lost profits and damages to goodwill can never be permitted, only that, in this case, Kysar's calculations of both are really one and the same. There is, however, testimony that Kysar kept the two types of damages clearly distinct. We find no abuse of discretion.

Affirmed.