Argued and submitted September 3, 1998; resubmitted en banc October 13, 1999, appeal dismissed; affirmed on cross-appeal April 19, petition for review denied August 15, 2000 (330 Or 553)

Jeff TALBERT,
*Appellant - Cross-Respondent,*

*v.*

FARMERS INSURANCE EXCHANGE,
a California corporation,
Truck Insurance Exchange,
a California corporation,
Fire Insurance Exchange,
a California corporation,
Farmers New World Life Insurance Company,
a Washington corporation,
Farmers Insurance Company of Oregon,
an Oregon corporation all known as
Farmers Insurance Group of Companies,
and Mike Chase,
*Respondents - Cross-Appellants.*

(95CV0172AB; CA A96591)

5 P3d 610

Hank McCurdy argued the cause for appellant - cross-respondent. With him on the briefs was Dobbins McCurdy & Yu, LLP.

Thomas W. Sondag argued the cause for respondents - cross-appellants. With him on the briefs was Lane Powell Spears Lubersky LLP.

Before Deits, Chief Judge, and Edmonds, De Muniz, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler, and Brewer, Judges.

LANDAU, J.

Wollheim, J., concurring in part; dissenting in part.

## LANDAU, J.

Plaintiff appeals a judgment in his favor for fraud. He assigns error to the trial court's allowance of defendants' motion for a directed verdict as to his prayer for punitive damages. Defendants move to dismiss the appeal on the ground that plaintiff already has executed a satisfaction of judgment on the fraud claim and therefore is precluded from putting that judgment at risk in this appeal. Defendants also cross-appeal, arguing that the trial court should have granted a directed verdict on the fraud claim. We dismiss the appeal and affirm on the cross-appeal.

The facts relevant to the disposition of the case are not in dispute. Plaintiff was an insurance agent who worked for defendants in Bend. He initiated this action for fraud against defendants, alleging that defendants induced him to give up his lucrative agency in Bend and to move to Madras by means of false representations concerning the manner in which his compensation would be calculated. He included in his complaint a prayer for punitive damages. At trial, however, the court allowed a motion for a directed verdict as to the prayer for punitive damages. In its instructions to the jury on the fraud claim, the trial court informed the jury that either reckless or intentional fraud would suffice. The jury returned a general verdict for plaintiff, which did not specify defendants' level of fault.

Plaintiff appeals, assigning error to the trial court's dismissal of the prayer for punitive damages. While the appeal was pending, defendants paid plaintiff's fraud damages, and plaintiff executed a satisfaction of judgment on the fraud claim. Defendants now move to dismiss the appeal on the ground that plaintiff can obtain no relief on appeal, because plaintiff's only remedy is a retrial, and that remedy is precluded by his acceptance of the benefits of the judgment. Plaintiff argues that his acceptance of the benefits of the fraud judgment is irrelevant, because he is entitled to a new trial on punitive damages alone. According to plaintiff, as long as the evidence was sufficient to support a fraud verdict on any ground, it is appropriate to remand for a new trial on punitive damages alone. Defendants rejoin that whether a new trial on punitive damages alone is permissible depends

on the nature of the jury's verdict on the underlying claim of fraud. In this case, they argue, a retrial on punitive damages alone is not appropriate because it cannot be determined that the jury verdict on the fraud claim was of the sort that would support punitive damages. In view of the potential for inconsistent verdicts, defendants conclude, the only appropriate remedy would be a retrial on the case as a whole, a remedy that is no longer available to plaintiff.

■ ■    As a general rule, prejudicial trial court error requires a remand for a retrial on all factual issues. As the Supreme Court explained in *Maxwell v. Port. Terminal RR. Co.*, 253 Or 573, 577, 456 P2d 484 (1969):

> "[E]vidence of fault can influence the jury's measurement of damages; and the kind and degree of injuries may influence some jurors in their evaluation of the evidence on liability. Whatever logical problems these elements of lawyer folk-lore may suggest, we believe that neither side in this type of case should be encouraged to manipulate errors in one trial to gain tactical advantage in a new trial before a new jury. Accordingly, we hold that the new trial in a personal-injury case ordinarily should be a new trial on all contested factual issues, regardless of the ability of the parties on appeal to pinpoint error so as to show that the error, if any, may have affected only one issue. There will, of course, be exceptional cases in which the trial court, in the exercise of judicial discretion, properly will limit the issues for a new trial. But the standard to be applied in the exercise of this discretion is reasonable certainty that the issue or issues to be eliminated from the second trial are no longer viable issues in the case and that their removal will not prejudice the right of either party to the kind of jury trial to which he would have been entitled but for the error or errors necessitating the new trial."

(Citation omitted.) The court referred to "two party personal injury cases," in *Maxwell*. But its general rule has been invoked in other tort cases, as well. *See, e.g., Wolf v. Nordstrom*, 291 Or 828, 836, 637 P2d 1280 (1981). Thus, under *Maxwell*, the question is whether, in light of the underpinnings of the general rule, this is an exceptional case.

We conclude that this is not an exceptional case. Remanding this case for a retrial on punitive damages alone

creates the potential for inconsistent verdicts. From the manner in which the jury was instructed, and from the fact that the jury returned only a general verdict, it is entirely possible that it could have determined that defendants engaged in reckless conduct only. Were that the case, it would be inappropriate—indeed, it would be error—to permit a jury to award punitive damages. *See, e.g., Donald H. Hartvig, Inc. v. Clackamas Town Center,* 101 Or App 79, 84, 789 P2d 679, *rev den* 310 Or 393 (1990).

Plaintiff insists that *Maxwell* simply is no longer good law. According to plaintiff, subsequent cases identifying various exceptions to the general rule described in *Maxwell* effectively have swallowed the rule. In particular, plaintiff relies on four decisions: *Weiss v. Northwest Accept. Corp.*, 274 Or 343, 546 P2d 1065 (1976); *Wolf,* 291 Or at 836; *McGregor v. Barton Sand & Gravel, Inc.*, 62 Or App 24, 660 P2d 175 (1983); and *Wells v. Marleau,* 79 Or App 784, 720 P2d 409, *rev den* 302 Or 159 (1986). Plaintiff, however, reads too much into those cases. To begin with, *Maxwell* has never been overruled; to the contrary, it continues to be cited as stating the general rule. *See, e.g., Baker v. English,* 324 Or 585, 589 n 5, 932 P2d 57 (1997). Moreover, in none of the decisions on which plaintiff relies did a remand on the issue of punitive damages create the potential for inconsistent verdicts, as it would in this case.

*Weiss,* for example, was decided before the Supreme Court first held that reckless conduct alone cannot support an award of punitive damages. 274 Or at 352. In *Wolf,* the Supreme Court held that the trial court erred in instructing the jury on punitive damages and remanded for retrial on punitive damages alone. 291 Or at 836. There was no question whether the underlying tort of false imprisonment was sufficient to support a punitive damages verdict—the tort requires intentional conduct. *Hiber v. Creditors Collection Service,* 154 Or App 408, 413, 961 P2d 898, *rev den* 327 Or 621 (1998). Thus, the decision is plainly distinguishable.

*McGregor* presented the same situation. This court found that the jury had been erroneously instructed on the issue of punitive damages, and there was no question

whether the underlying claims—trespass and ultrahazardous activity—were sufficient to support a punitive damages award. 62 Or App at 28. In *Wells*, this court similarly concluded that the trial court erred in removing from the jury's consideration a request for punitive damages claim arising out of a claim of intentional fraud. In both cases, this court remanded for a retrial on punitive damages alone. In both cases, there was no risk of inconsistent verdicts.

We therefore reject plaintiff's contention that *Maxwell* is no longer good law and that the potential for inconsistent verdicts poses no impediment to remanding this case for a retrial on the issue of punitive damages alone.

The dissent suggests a slightly different approach. It acknowledges that a retrial on the entire case is precluded by plaintiff's execution of a satisfaction of judgment. It also acknowledges the possibility of inconsistent verdicts in the event of a remand on punitive damages only. Winding its way between the Scylla and Charybdis of those twin difficulties, the dissent suggests that we should simply remand with special instructions first to determine whether the fraud that defendants committed was intentional and only if so to determine also whether to award punitive damages.

We do not gainsay our *authority* to do as the dissent suggests. *See, e.g., State v. Boots*, 315 Or 572, 848 P2d 76 (1993) (authorizing retrial to determine limited issue of whether aggravating elements had been proven). We do question the wisdom of doing so. Such a remand, in effect, would give plaintiff two bites at the proverbial apple. As we have noted, the jury could well have determined that defendants engaged in merely reckless conduct. The dissent's remedy would give plaintiff one more chance to prove that defendants' conduct was not merely reckless, but intentional—and without putting the fraud verdict itself at risk. That strikes us as precisely the sort of tactical advantage that the court in *Maxwell* cautioned against.

The dissent insists that, despite that consequence, it is the "only just result," because to do otherwise is to "punish" plaintiff for the trial court's error. According to the dissent, it is defendants' failure to ask for a special verdict form that

created the possibility of inconsistent verdicts: "[H]ad defendants then raised," the dissent complains, "the concern that the jury instructions did not ask the jury to specify intentional versus reckless fraud, the trial court could have remedied that ambiguity by submitting a jury instruction requesting such specification." 166 Or App at 609. We respectfully disagree.

Defendants moved for, and obtained, a directed verdict on the punitive damages claim at the close of plaintiff's case. That means that, by the time the fraud claim was submitted to the jury, plaintiff already had lost the punitive damages claim. By the time the jury was instructed on the fraud claim, therefore, defendants had no interest in insuring that the jury's verdict specified intentional, as opposed to merely reckless, fraud. Because punitive damages were already out of the case, it no longer mattered to them. It mattered very much to plaintiff, or at least it should have. Plaintiff would have been in the position of having to create a record demonstrating error and prejudice for an appeal of the trial court's decision on the punitive damages claim. Thus, it was incumbent upon plaintiff—not defendants—to get the jury to specify whether its verdict was based on intentional fraud, so that very problem could be avoided. *See generally Building Structures, Inc. v. Young*, 328 Or 100, 110, 968 P2d 1287 (1998) (appellant waived objection to defective verdict by failing to object when jury was still present and trial court could have cured the defect).

■ We therefore conclude that it would be inappropriate to provide plaintiff with the opportunity to retry his case at no risk. Assuming for the sake of argument that the trial court erred in allowing the directed verdict motion on the prayer for punitive damages, the only appropriate remedy would be to retry the entire case. That remedy is not available to plaintiff in this case, because he already has received the benefit of the judgment in the underlying claim. When an appellant accepts the benefits of the very judgment he puts at risk by appealing, the remedy is dismissal of the appeal. *Schlect v. Bliss*, 271 Or 304, 309, 532 P2d 1 (1975); *Mask and Mask*, 143 Or App 377, 380, 923 P2d 1304 (1996).

██ There remains defendants' cross-appeal. Defendants argue that the trial court erred in failing to enter a directed verdict on the fraud claim. We may reverse the denial of a directed verdict motion only if there is a complete absence of proof on one or more elements of a plaintiff's claim. *Rock v. Francis*, 133 Or App 80, 84, 889 P2d 1337 (1995). After carefully reviewing the record at trial, we cannot say that there is such a complete absence of evidence on any of the elements of plaintiff's fraud claim.

Appeal dismissed; affirmed on cross-appeal.

**WOLLHEIM, J.,** concurring in part and dissenting in part.

Defendants' argument that plaintiff's acceptance of judgment benefits creates a potential for inconsistent verdicts is a red herring. I agree that, as a general rule, prejudicial trial error requires remand for a retrial on all factual issues. *See Maxwell v. Port. Terminal RR. Co.*, 253 Or 573, 577, 456 P2d 484 (1969), *and Pac. Gen. Contrs. v. Slate Const. Co.*, 196 Or 608, 611, 251 P2d 454 (1952). However, it is also the rule in Oregon that where a judgment concerns two separate claims, acceptance of the benefits on one claim does not bar an appeal on the remaining claim. *Pac. Gen. Contrs.*, 196 Or at 612. Accordingly, neither the majority opinion nor defendants dispute that our current case law permits a limited remand on the issue of punitive damages, even where it is impossible to tell from the jury instructions or verdict form on what underlying theory the jury found defendants liable. *See McGregor v. Barton Sand & Gravel, Inc.*, 62 Or App 24, 660 P2d 175 (1983). I concede that remanding such a case for punitive damages raises the potential for inconsistent verdicts, but that is true whether plaintiff has accepted the benefits of the judgment or not. Again, that potential does not, as a matter of law, require full retrial or dismissal of the appeal.

I would remand on the narrow issue of punitive damages with special instructions that eliminate the potential for inconsistent judgments. In particular, I would order that the trial court submit to the jury a special interrogatory that first asks the jury whether fraud committed by defendants was "intentional." If the answer to that question is "Yes," the judge would then instruct the jury to consider the punitive

damages claim. If the answer to the first question is "No," the judge would instruct the jury to proceed no further.

My disagreement with the majority is a limited, albeit sizeable, one. The majority concludes that a limited remand on punitive damages would give plaintiff two bites at the proverbial apple. 166 Or App at 605. I, on the other hand, conclude that the only just result is to remand the case and allow plaintiff the opportunity to pursue only that issue that he was, in fact, entitled to pursue if the trial court had not erred. The majority's opinion is driven by the simple fact that it is plaintiff who appealed and, therefore, bears the risk of that appeal. What is driving my view is that plaintiff should not be punished for the trial court's error. The majority's ultimate conclusion imposes on plaintiff "an unnecessarily heavy burden" for prevailing on his appeal. *Wells v. Marleau*, 79 Or App 784, 789, 720 P2d 409, *rev den* 302 Or 159 (1986).

My view of the case law and the facts in this matter persuade me that remand is necessary. In *McGregor*, the trial court erred in submitting a jury instruction that would have permitted the jury to award punitive damages on a finding that the defendants had trespassed with only "reckless indifference." 62 Or App at 27. We explained that, while the jury could have found that the defendants did not act with deliberate disregard for the plaintiff's rights pertaining to the trespass claim, evidence existed from which the jury could have found that defendants did, in fact, act with deliberate disregard. *Id.* at 30. Therefore, on remand of the punitive damages claim, we noted that "the questions on remand are *both* whether punitive damages are warranted by defendants' conduct and, *if so*, what if any amount plaintiffs should recover as punitive damages." *Id.* at 35 (emphasis in original).

The same is essentially true here. As in *McGregor*, the majority agrees that the evidence supports the liability verdict generally and, specifically, could support a verdict for punitive damages. I would not presume that the jury found only reckless fraud where the jury could have found intentional fraud. As a result, plaintiff is entitled to consideration of his punitive damages claim.

We have implicitly held that it is not incumbent on the plaintiff to submit to the jury a verdict form that specifies intentional fraud over reckless fraud to permit submission of punitive damages to the jury. *See McMullin v. Murphy*, 89 Or App 230, 234-35 n 3, 748 P2d 171, *rev den* 305 Or 576 (1988) (affirming jury verdict on punitive damages where, based on the verdict form and instructions not objected to at trial, one could not tell if fraud judgment was, in fact, based on reckless or intentional fraud). That is not to say that plaintiffs are always entitled to a jury determination on the basis of a verdict in that posture. However, I would hold that the trial court erred, as a matter of law, in not submitting the punitive damages claim to the jury. If the trial court had not erred, both parties would have submitted their jury instructions on the fraud claim in contemplation of the jury's consideration of the punitive damages claim. Thus, had defendants then raised, as they do now on appeal, the concern that the jury instructions did not ask the jury to specify intentional versus reckless fraud, the trial court could have remedied that ambiguity by submitting a jury instruction requesting such specification.

I disagree strongly with the majority opinion that plaintiff's choices at trial and subsequent appeal are calculated decisions to gain tactical advantage. 166 Or App at 605. Certainly, if the issue of punitive damages was relevant to plaintiff's case at the time the jury was instructed, or if there was some evidence of tactical manipulation on the part of plaintiff, I would not afford plaintiff a partial remand. However, the majority believes that

(1) plaintiff should have *anticipated* that the trial court was in error in its directed verdict ruling on the punitive damages;

(2) plaintiff should have *anticipated* that he would win on the fraud claim;

(3) plaintiff should have then *anticipated* receiving satisfaction of the judgment; and

(4) despite the numerous reasons that weigh in a decision of this kind, plaintiff should have *anticipated at trial* that he would *appeal* the directed verdict on punitive damages.

The bare fact remains, however, that at the time the instructions were submitted to the jury, the punitive damages claim was not an issue in the case and was not relevant. On that basis, I would not here disparage plaintiff's failure at soothsaying as a calculated attempt at a second bite of the apple.[1]

Rather, I would limit the remedy to fulfill our function as an error-correcting court while protecting the integrity of the jury's verdict. It seems unnecessary to abrogate that function and decline to formulate a remedy within our authority that places the parties in the position they would have been had the trial court not erred. My remedy would permit the issue of punitive damages to be considered by the jury, which, through *no fault of plaintiff*, was not submitted to the jury. Such a result would protect the integrity of the liability verdict from which plaintiff has benefitted and permit plaintiff to litigate and, perhaps, vindicate only those issues he would have been entitled to litigate had the trial court not erred as a matter of law.

I dissent.[2]

DeMuniz, Haselton, and Armstrong, JJ., join in this dissent.

---

[1] Indeed, it would appear that the majority believes that, in addition to the considerations listed above that plaintiff should have anticipated, that the fraud verdict was going to be on the recklessness claim only, that he would, in fact, receive satisfaction of the judgment, that he would prevail on the punitive damages appeal, and that he would secure a partial remand that would provide him a second opportunity essentially to prove intentional fraud. That is too far a stretch in my estimation.

[2] I concur in the majority's disposition of the cross-appeal.