Argued and submitted July 6, reversed and remanded in part and affirmed in part on appeal; affirmed on cross-appeal November 15, 2000

HOWMAR MATERIALS, INC.,
Howard Mills and Margaret Mills,
*Respondents - Cross-Appellants,*

*v.*

James E. PETERSON, Jr.,
*Appellant - Cross-Respondent.*

(16-97-08036; CA A102527)

14 P3d 631

George W. Kelly argued the cause and filed the briefs for appellant - cross-respondent.

Meg E. Kieran argued the cause for respondents - cross-appellants. With her on the briefs was Harold, Leahy, Trudeau & Kieran.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

## KISTLER, J.

Plaintiffs sold land and a business to defendant. When defendant stopped making payments after the land flooded, plaintiffs filed a judicial foreclosure action. Defendant responded by counterclaiming for, among other things, fraudulent misrepresentation and fraudulent concealment. Defendant also sought to add a claim for punitive damages, but the trial court refused to allow him to do so. The court ruled in plaintiffs' favor on their foreclosure action. The jury returned a verdict in defendant's favor on his two fraud counterclaims, awarding a separate amount of damages on each counterclaim. The trial court ruled that the two damage awards duplicated each other and subtracted one from the other. The court entered judgment accordingly. Defendant appeals and plaintiffs cross-appeal from the judgment. We reverse in part on the appeal and affirm on the cross-appeal.

Between 1990 and 1996, plaintiffs owned and operated a rock mining quarry on land located along the Willamette River in Dexter, Oregon.[1] In 1994, the Willamette flooded several times, causing extensive damage to plaintiffs' property. Plaintiffs installed a new dike and made emergency repairs on at least one embankment[2] in an attempt to prevent future flood damage to the property. Plaintiffs used soil, gravel, and quarry rock riprap to reinforce the embankment. Despite their efforts, the embankment remained in an unreliable condition and the property remained at risk.[3]

Plaintiffs listed their property for sale in February 1996. Defendant became interested in purchasing the property. In March 1996, plaintiffs and defendant entered into an earnest money agreement for the purchase of plaintiffs' real property and business. During the course of negotiations,

---

[1] Because the jury returned a verdict for defendant, we state the facts in the light most favorable to him.

[2] The property contained both embankments and dikes, *see Webster's Third New Int'l Dictionary*, 632, 738 (unabridged ed 1993), although the parties sometimes use the terms interchangeably.

[3] The amount of rock that plaintiffs ordered to repair the embankment was substantially greater than the amount actually used. Based on this fact and other testimony at trial, a reasonable juror could infer that plaintiffs knew that they did not use as much rock as needed to address the problem properly.

plaintiffs assured defendant that all the embankments were in good condition; they failed, however, to inform defendant of the embankment's recent failures and the resulting likelihood of future flood damage to the property. During one of several inspections of the property, defendant's wife noticed some of the riprap that was being used to repair the embankment and asked plaintiff Howard Mills why it was there. Mills was evasive and did not tell defendant or his wife that the riprap was there to repair the deteriorating embankment.

Plaintiffs made other assurances. They told defendant that the rock mining operation generated at least $250,000 in annual income. They stated that all equipment was in good working condition. In the earnest money agreement, they represented that all "dikes * * * were placed within in [sic] the parameters" of the Army Corps of Engineers and Lane County codes and were in "compliance with the Department of Geology & Mining Industries guidelines."

The parties closed the sale in June 1996 and executed a trust deed and two promissory notes. After taking possession of the property in June 1996, defendant began a rock mining business similar to plaintiffs'. Almost immediately, defendant began experiencing problems with the equipment. Because the equipment was essential to carrying on the business, defendant was forced to stop operations while repairing it. Defendant incurred substantial costs due to the repairs and lost several weeks' worth of revenue while the equipment was being repaired.

In January 1997, the Willamette flooded and breached the embankment, this time submerging the mining pits and causing such damage that defendant stopped all mining operations on the property. Convinced that the property was no longer suitable for mining, defendant sold the bulk of the equipment at an auction. In June 1997, defendant stopped making the payments required under the notes, and plaintiffs filed a judicial foreclosure action, seeking the amount owed on the promissory notes, foreclosure of the trust deed, and costs and attorney fees under the terms of the notes. Defendant responded by counterclaiming for breach of

contract, fraudulent concealment, fraudulent misrepresentation, and fraudulent nondisclosure. Before trial, defendant moved to amend his answer to include a claim for punitive damages based on his fraud counterclaims, but the trial court denied his motion.

The trial court granted plaintiffs' motion for a directed verdict on one of defendant's breach of contract counterclaims and on his fraudulent nondisclosure counterclaim. The remaining legal claims went to the jury while the foreclosure claim was tried to the court. Plaintiffs prevailed on the foreclosure action and on defendant's breach of contract counterclaim. The court found that plaintiffs were entitled to recover $267,825.94 plus interest on the notes. The jury, however, found for defendant on the two remaining fraud counterclaims, finding specifically that plaintiffs had both made material misrepresentations to defendant and actively concealed material facts from defendant in connection with the sale. The jury awarded defendant $178,434.75 on the fraudulent misrepresentation counterclaim and $78,091.19 on the fraudulent concealment counterclaim.

In entering judgment, the trial court did not add the jury's awards on the two counterclaims together. Rather, the court concluded that the two counterclaims presented different theories for recovering the same damages and deducted only the larger of the two awards from the amount that defendant owed on the promissory notes. The court entered judgment accordingly on May 20, 1998.

On June 19, 1998, defendant filed a notice of appeal. After considering the parties' requests for costs and attorney fees, the trial court found that plaintiffs were the prevailing party and awarded them costs; however, the court refused to award plaintiffs attorney fees because of plaintiffs' inequitable conduct. The trial court entered an order to that effect on June 23, 1998. On June 29, 1998, plaintiffs filed a notice of cross-appeal. On July 31, 1998, the trial court entered a supplemental judgment awarding costs to plaintiffs but denying their request for attorney fees. Neither party has filed an amended notice of appeal from the supplemental judgment.

■■ Defendant raises multiple assignments of error on appeal. We begin with his second assignment of error. He

argues that, under ORS 18.535,[4] the trial court should have allowed him to amend his pleadings to include a claim for punitive damages. ORS 18.535 provides that "[a]t any time after the pleading is filed, a party may move the court to allow the party to amend the pleading to assert a claim for punitive damages." ORS 18.535(2). However, "[t]he court shall deny a motion to amend * * * if the court determines that the affidavits and supporting documentation submitted by the party fail to set forth specific facts supported by admissible evidence adequate to avoid the granting of a motion for directed verdict * * *." ORS 18.535(3). The trial court ruled that defendant's motion was timely but that his affidavit failed to set forth enough evidence to avoid a directed verdict on punitive damages.

■      We conclude that defendant presented sufficient evidence. Defendant submitted an affidavit alleging that plaintiffs intentionally made several false statements in the course of negotiations, including false statements that embankments on the property had been "properly maintained" and that "there were no areas where the river presented any existing or potential problem or risk to the * * * property." Defendant's affidavit also alleges that plaintiffs knew that the statements were untrue, that defendant reasonably relied on plaintiffs' false statements, and that defendant was injured as a result of plaintiffs' false statements. That evidence would permit a reasonable juror to infer that plaintiffs intentionally defrauded defendant.

---

[1] ORS 18.535 provides, in relevant part:

"(1) A pleading in a civil action may not contain a request for an award of punitive damages except as provided in this section.

"(2) At the time of filing a pleading with the court, the pleading may not contain a request for an award of punitive damages. At any time after the pleading is filed, a party may move the court to allow the party to amend the pleading to assert a claim for punitive damages. The party making the motion may submit affidavits and documentation supporting the claim for punitive damages * * *.

"(3) The court shall deny a motion to amend a pleading made under the provisions of this section if the court determines that the affidavits and supporting documentation submitted by the party seeking punitive damages fail to set forth specific facts supported by admissible evidence adequate to avoid the granting of a motion for a directed verdict * * *.

"(4) The court shall conduct a hearing on a motion filed under this section not more than 30 days after the motion is filed and served * * *."

Because punitive damages can be awarded for intentional fraud, *McMullin v. Murphy*, 89 Or App 230, 748 P2d 171, *rev den* 305 Or 576 (1988), defendant's evidence was sufficient to support amending his complaint to add a punitive damages claim. ORS 18.535.

■     Plaintiffs do not question that conclusion so much as they argue that defendant waited too long to file his motion to amend. Defendant filed the motion four days before trial, and the trial judge held a hearing on the motion the morning of the first day of trial. Plaintiffs argue that "ORS 18.535 antic-ipates a longer time frame than four days" and that they were not given a sufficient hearing because they "were not pre-pared to have an evidentiary hearing on the merits at that time." The statute, however, allows a motion to amend "[a]t any time" after the initial pleading is filed. ORS 18.535(2). It also requires a hearing "not more than 30 days after the motion is filed," ORS 18.535(4), which the court conducted. Both requirements of the statute were met. The trial court did not err in ruling that defendant's motion to amend was timely, although it erred in ruling that it was not sufficient.[5]

■     Defendant also assigns error to the trial court's inter-pretation of the jury's verdict on his fraud claims. Before turning to that issue, we first address whether our ruling that defendant's punitive damages claim must be remanded requires that we vacate the jury's verdict on his fraud coun-terclaims and remand for a retrial on those claims as well. *See Talbert v. Farmers Ins. Exchange*, 166 Or App 599, 603-04, 5 P3d 610, *rev den* 330 Or 553 (2000) (reversal on punitive damages claim required a remand on both that claim and the underlying fraud claim). In *Talbert*, the trial court granted a directed verdict on the plaintiff's punitive

---

[5] We need not decide whether the statute's use of the words "[a]t any time" divests the trial court of discretion to hold that a motion to amend under ORS 18.535 is untimely. In this case, the court ruled that defendant's motion was timely, and plaintiffs have not provided any basis for saying that the trial court abused its discretion. Although plaintiffs have asserted that they were prejudiced by defendant's late motion, the trial court was not required to accept their asser-tion. Defendant's request for punitive damages was based on intentional fraud—a claim that also formed the basis for three of defendant's counterclaims. The trial court reasonably could have concluded that plaintiffs knew that intentional fraud was going to be an issue at trial and either were or should have been prepared to respond to that issue.

damages claim but submitted his underlying fraud claim to the jury without requiring the jury to decide whether the plaintiff had proved reckless or intentional fraud. In those circumstances, we held that a remand to decide the punitive damages claim also required that the underlying fraud claim be retried.

We explained in *Talbert* that it was unclear whether the jury had found reckless or intentional fraud. *Id.* at 604 (stating that "[f]rom the manner in which the jury was instructed, and from the fact that the jury returned only a general verdict, it is entirely possible that it could have determined that defendants engaged in reckless conduct only"). Remanding for the punitive damages claim alone, we concluded, created the risk of inconsistent verdicts. *Id.* at 603-04. In this case, there is no such uncertainty; the jury found intentional fraud. The jurors were instructed to find for defendant if they found that "the plaintiff made a false representation of material matter, that the plaintiff knew that the representation was false, that the plaintiff intended to mislead the defendant, [and] that the defendant reasonably relied upon the representation." Because the instructions did not permit a verdict for reckless fraud, this case differs from *Talbert*. A remand for a trial on defendant's punitive damages claim does not require that we vacate the jury's verdict on his underlying fraud claims. Further, we conclude that a remand in which the merits of the fraud claim are not retried is appropriate in this case. *See Wells v. Marleau,* 79 Or App 784, 720 P2d 409, *rev den* 302 Or 159 (1986). We accordingly turn to the question whether the trial court erred in not adding the awards on defendant's two counterclaims together.

As noted above, the jury found that plaintiffs both made false representations of material fact to defendant and actively concealed material facts from defendant. When asked, "what is the amount of [defendant's] damages, if any, as a result of his reliance on the false representations?" the jury responded "$178,434.75." When asked, "what is the amount of [defendant's] damages, if any, as a result of the concealment?" the jury responded, "$78,091.19." Neither the instructions nor the special verdict form asked the jury whether any damages awarded for the two claims should be added together or treated as duplicative. The trial court

accepted the jury's verdict awarding separate amounts on the two counterclaims but limited the total award to the larger of the two. Neither party asked for clarification from the jury pursuant to ORCP 59 G(4).[6]

There are two lines of cases in this court addressing this issue. Following Supreme Court decisions, we have held that, after the trial court accepts the verdict, any objection to the jury's verdict is waived. *See Building Structures, Inc. v. Young*, 328 Or 100, 968 P2d 1287 (1998) (the verdict having been accepted, the defendant could not argue that it was legally impossible for the jury to have awarded plaintiff punitive damages but not general damages); *Great West Construction Co. v. Martin Corp.*, 170 Or App 616, 13 P3d 1016 (2000) (having accepted the verdict, the defendant waived its argument that a verdict finding that both parties had breached the contract was legally inconsistent); *Kilgore v. People's Savings & Loan Assn.*, 107 Or App 743, 752-53, 814 P2d 163 (1991), *rev dismissed* 313 Or 300 (1992). Under this line of cases, once the verdict has been accepted, the courts have given it effect even though it appears that the verdict may be incorrect as a matter of law.

In one case decided after the Supreme Court's decision in *Building Structures*, the trial court rejected the defendant's request to ask the jury whether it intended that the damages on its two counterclaims would be cumulative. *Hampton Tree Farms, Inc. v. Jewett*, 158 Or App 376, 386-88, 974 P2d 738, *rev den* 329 Or 61 (1999). We concluded that it was nevertheless possible to determine the legal effect of the jury's verdict. We reasoned that, because the damages for one claim were necessarily included in the other, the trial court did not err in giving effect only to the larger of the two awards. *Id.* at 386-87, 388 n 9.[7] We need not decide whether our reasoning in *Hampton Tree Farms* can be reconciled with the Supreme Court's reasoning in *Building Structures* or our

---

[6] ORCP 59 G(4) provides:

"If the verdict is informal or insufficient, it may be corrected by the jury under the advice of the court, or the jury may be required to deliberate further."

[7] We reasoned that "[t]he trial court's failure to obtain the jury's express explanation does not prevent either it or us from using the available information to determine the legal effect of the verdict." *Hampton Tree Farms*, 158 Or App at 388 n 8.

reasoning in *Great West Construction*. Under either test, the court erred in not giving effect to the jury's verdict.

Under *Building Structures*, plaintiffs could have sought clarification of the jury's verdict awarding separate amounts on the two counterclaims. Having chosen not to do so, they waived any defect in the verdict. Plaintiffs note that the trial court ruled, in an unreported conversation before the jury was excused, that it viewed the two verdicts as duplicative and would not add the two amounts together.[8] Plaintiffs reason that, in light of the trial court's ruling, the burden was on defendant to ask for clarification from the jury. Plaintiffs' argument is at odds with the Supreme Court's reasoning in *Building Structures*. The court explained that, unless the parties have sought to clarify the jury's verdict either by way of instruction or by requesting clarification under ORCP 54 G(4), neither the trial nor the appellate court should second guess the jury's determination. The fact that the trial court sought to do so does not excuse plaintiffs from seeking clarification of the jury's verdict if they believed that the award on defendant's two counterclaims was duplicative. To the extent that the jury could have reconsidered, had it been asked, plaintiffs waived that opportunity.

We reach the same conclusion under the test set out in *Hampton Tree Farms*. Under the reasoning in that case, the trial court should give effect to the jury's separate awards on defendant's two counterclaims unless it can say, as a matter of law, that one was necessarily included in the other. In this case, a reasonable juror could find that the jury's verdict on defendant's fraudulent misrepresentation claim was based on different damages from its verdict on defendant's fraudulent concealment claim.

Specifically, the evidence permitted the jury to find that plaintiffs misrepresented the condition of the equipment that defendant purchased. The jury could have found that defendant spent over $60,000 in repairs to put the equipment in working condition and lost at least $58,000 in revenue while the equipment was being repaired. Additionally, the

---

[8] Although the conversation was not reported, plaintiffs moved to supplement the record with a letter to the trial court reciting what had occurred during that conversation. We allowed their motion when the case was before us.

jury could have found that the plaintiffs misrepresented the value of the equipment that defendant bought.[9] Those losses occurred before the river breached the embankments, the event that ultimately put defendant out of business.

The evidence also established that plaintiffs concealed material facts from defendant regarding the condition and likelihood of the failure of the embankments. When the embankments did fail, defendant's property was substantially damaged and defendant was effectively put out of business. Given the amount defendant paid for the property, the jury reasonably could have found that he suffered approximately $78,000 in damages as a result of the facts that plaintiffs concealed.[10] Whether the test in *Hampton Tree Farms* or the test in *Building Structures* applies, the trial court erred in not adding the jury's awards on defendant's two counterclaims together.

■    Defendant also assigns error to the trial court's decision to award costs to plaintiffs. We do not reach the merits of this assignment because we lack jurisdiction to do so. After entering judgment on the parties' underlying claims and counterclaims, the trial court entered a supplemental judgment awarding plaintiffs costs but refusing to award them attorney fees. Before the supplemental judgment was entered, however, defendant appealed and plaintiff crossappealed. In order for the parties to challenge any aspect of the supplemental judgment, they were required to file an amended notice of appeal. ORAP 2.20;[11] *cf. Ricciardi v. Frink,*

---

[9] Based partly on plaintiffs' assertions regarding the condition of the equipment, an appraisal around the date of the sale valued the equipment at $399,000. Defendant sold all but roughly $25,000 worth of the equipment at an auction and received $103,993. The jury could have concluded that this discrepancy was due, in part, to plaintiffs' misrepresentations about the value and condition of the equipment.

[10] Defendant put on evidence that plaintiffs' concealment regarding the condition of the embankment ultimately caused defendant to suffer $160,000 in damages—the amount paid for the real property less the value of the real property after an embankment was breached. The jury's award of $78,091.19 was well within defendant's figure.

[11] ORAP 2.20(1) provides, in relevant part:

"If the trial court enters a supplemental judgment awarding attorney fees or costs under ORCP 68 C(5)(b) after the notice of appeal has been filed, and if the appellant intends to challenge the supplemental judgment on appeal, the appellant, within 30 days after entry of the supplemental judgment, shall serve and file an amended notice of appeal from the supplemental judgment."

133 Or App 436, 441-42, 891 P2d 1336, *rev den* 321 Or 268 (1995) (addressing situation where no appeal on the merits is pending). Because defendant failed to do so, we lack jurisdiction to decide that issue.[12]

▮▮ Defendant's final assignment of error relates to the trial court's decision to grant a directed verdict on defendant's counterclaims for breach of contract and fraudulent nondisclosure. Both counterclaims were based on defendant's allegation that, under the contract, "[a]ll dikes placed on the [property] were to be in compliance with the codes, rules and regulations" of the Army Corps of Engineers, Lane County, and the Department of Geology and Mining Industries. Plaintiffs argued, and the trial court agreed, that defendant had failed to submit evidence establishing that any dike on the property was in violation of those regulations. Moreover, defendant failed to establish that plaintiffs' conduct with respect to dikes on the property before selling the property was subject to any of these regulations.

We agree with the trial court's ruling. Although several representatives from various governmental agencies were called as witnesses, none of them testified that plaintiffs violated any regulation with respect to dikes on the property. The closest defendant's evidence came was a representative from Lane County who testified that, in his opinion, *if* plaintiffs had engaged in certain conduct, they would have needed a permit. However, defendant failed to offer evidence supporting his claim that plaintiffs had engaged in that conduct.

▮ Plaintiffs' cross-appeal contains two assignments of error. The first is that the trial court erred in not awarding plaintiffs attorney fees. Because plaintiffs, like defendant, failed to appeal from the trial court's supplemental judgment, we lack jurisdiction over this issue.[13] The second is that

---

We note that ORS 20.220 may apply on remand even though defendant has not perfected an appeal from the supplemental judgment.

[12] Defendant also argues that the trial court erred in awarding plaintiffs prejudgment interest. Because the trial court did not abuse its discretion, we affirm this decision without discussion.

[13] ORAP 2.20(2) required plaintiffs to file an amended notice of cross-appeal from the supplemental judgment. Plaintiffs rely on *Marquez v. Meyers*, 96 Or App 214, 772 P2d 437 (1989), for a contrary conclusion, but that case was decided before

the trial court erred in not granting plaintiffs a directed verdict on defendant's counterclaim for fraudulent misrepresentation. Taking the evidence in the light most favorable to defendant, we conclude that there was sufficient evidence to support the jury's verdict in favor of defendant for fraudulent misrepresentation.

Judgment on defendant's counterclaims for fraudulent misrepresentation and concealment reversed and remanded for entry of a judgment aggregating the two damages awards; reversed and remanded on defendant's claim for punitive damages; otherwise affirmed on appeal; affirmed on cross-appeal.

---

ORCP 68 C(5)(b) authorized entry of a supplemental judgment for attorney fees and ORAP 2.20(2) required that a supplemental notice of appeal be filed from the supplemental judgment.